Good morning and may it please the Court. Sarah Hunger on behalf of Appellant Timothy Barry, I'd like to reserve two minutes for rebuttal. Just watch your time, Dr. Wells. Sure. In order to prevail on his claims, Mr. Barry must show defendants knew that forcing him to kneel on the asphalt and leaving him there for nearly an hour would cause him harm. In order to prevail on summary judgment, he must show there's a genuine dispute of material fact as to that issue. We submit that Mr. Barry has satisfied that burden. The evidence shows Albonaco himself sent him to kneel on the hot asphalt. He admits it. It was very hot that day. It was 95 degrees outside in the prison open yard in the middle of the desert. Counsel, help me with the facts here. I thought that your client was wearing some pants and there was no visible cutting or scarring of the pants. That right after this event, he was taken to the infirmary, checked out, and there was no problem. But his problem appeared later. Is that correct? That's not correct. He was wearing pants. That's in the record. He says that he was wearing kind of thin pants that were issued by the prison. In terms of what happened afterwards, Mr. Barry did go to the infirmary. The nurse notes that there were scratches and abrasions. And then later that day, it shows that he actually had deep second-degree burns. Now, the other side, you know, says, well, we don't know what happened in between there. But that would mean that Mr. Barry would have had to go back to his cell, have had something hot enough to burn his knees, and then would have had to do that, to intentionally inflict harm. But here you're talking about an action that says that the people you have sued knowingly, and intentionally, harmed your client. That's correct. What evidence do you have that they knew that he was harmed? And where is the allegation to that effect in the complaint? Sure. So, Albonaco says that he was the one who sent Barry to kneel. That's at ER 93. He sends him to kneel on hot asphalt. That day, it's in the mid-'90s. It's in the middle of the desert. Anyone who's accidentally stepped on hot asphalt knows just how painful that is in the summer. So he sends him over to kneel on hot asphalt. Then, Barry cries out for help. And he falls over from the pain. And neither Albonaco nor Bishop help him. They stand idly by. Instead, an officer picks him up, puts him back on his knees, and makes him stay there for 45 minutes until Albonaco comes back and releases him. So Albonaco's there at the beginning, and he's there at the end. Now, Albonaco says that he didn't hear any of it. But there's evidence in the record showing that the yard is not that big. Albonaco's only about 30 yards away. That's, you know, not much bigger than this courtroom. And Barry is crying out in pain. He's falling over. It's a commotion. And he says he's on the yard. The reason they put him down like everybody else was someone had been murdered, right? Yes. Someone had been murdered. It's a rather important thing. And they had to secure the yard. They didn't just put your client out there alone and said, let's see what happens, did they? No. There was a murder on the yard. But then, after everyone had been subdued, and the weapons had been found under Mr. Barry's version of the facts, the two weapons, and Albonaco says there were only two weapons. He was looking for the second one. So there's a genuine issue of material fact as to when the weapon was found. Was it before they sent Barry over or after? So under Mr. Barry's version of the facts, they had had the yard subdued, all the inmates are lying down, and the weapons have been found. And that's when they go and they send him over to Neal. And even if that initial act were constitutional, then when Barry is crying out in pain, he's falling over, at that point, certainly, when everyone's ignoring him, that's a constitutional violation, even if the initial act were not. Counsel, is there anything in the record regarding whether the entire prison yard was asphalt or portions were grass or dirt? I believe that portions were grass. I think that Mr. Barry says he was lying down on the grass. And then they sent him over to the concrete and asphalt wall. And the same goes for Bishop in addition to Albonaco. You know, Bishop says that he wasn't there. Mr. Barry says that he was. And, again, we have a genuine issue of material fact on that issue. And so Mr. Barry is entitled to a trial. And, in fact, this case is just what trials are for. You have the officer saying they weren't there, they didn't hear it. You have circumstantial evidence and Mr. Barry's testimony saying they were there. And they probably, you know, they did hear it because it was only 30 yards away and he's crying out. And so Mr. Barry deserves a chance to get on the stand and tell his side of the story and then put Albonaco on the stand and ask him, you know, what were you doing? What was your involvement? And get to cross-examine him. Let's assume for a moment, arguendo, that you're correct. What do you do with the concept of qualified immunity here? Sure. So, first off, only Defendant Albonaco moved on the issue of qualified immunity. Defendant Bishop did not. Because he claimed he wasn't there, right? Right. He claimed he wasn't there. So Defendant Albonaco is not entitled to qualified immunity. First, the right is clearly established. This Court has held on multiple occasions. In what case? Sure. Not in a high degree of generality. Certainly. So with respect to excessive force in the context of a prison disturbance, this Court has addressed it in Furness, Pratt, Martinez, and Johnson. And there are also similar facts in the Supreme Court's decision in Hope in which the prison officials sent an inmate to be tied to a hitching post in the hot sun. And the Supreme Court said the Eighth Amendment violation there was obvious, even though there had been no similar facts. Isn't there this difference? I know a little bit about Furness because I wrote it. That's right. And in each of those cases, you're talking about prison guards focusing on an individual. Like in Furness, he was in a jail cell. They sprayed pepper spray at him. Here you have a whole yard full of people that were doing exactly the same thing your client was. Exactly. Because someone had been murdered, and they were trying to protect themselves and make certain that all of the weapons had been found. Isn't that a huge difference between Furness and the other cases you cited in this one? So there are cases from this court, such as Johnson, Torres, and Jeffers, in which there was a large riot happening and qualified immunity was denied. But in those cases, the riot was still ongoing. For example, in Torres, there was an 18-inmate fight that was just, you know, the guards had shot off warning shots, used pepper spray, and they were still attacking each other. And that is when they applied force, and the court said that's okay. Similarly, in Jeffers, an inmate was shot, but that was as he was being stabbed in the middle of a riot by another inmate. This is very different. This is actually a lot more like Johnson. In Johnson, there was a riot outside on the yard, and then the guards used force. The court said that was fine. And then the guards subdued everyone, and then they left the inmates outside in 94-degree heat. Just left him there. It's up to you. And so they left him there in 94-degree heat, and the court said that once the inmates are subdued, then it turns into excessive force. And that's a very similar situation here. If he had been sent to kneel while, you know, the inmate was still being stabbed, while inmates are running around with weapons, that's a completely different story. Is it your contention that every one of the inmates that was forced to kneel on that asphalt has a similar claim? And if not, why not? Well, it's not in the record. I'm not quite sure what their – yeah. Work with me here. Sure. All these people were forced to do exactly what your client was because someone had been murdered. They were looking for weapons. So if they also received – Why don't all the rest of the inmates have a similar claim? There were only two other inmates that were forced to kneel. It's not everyone on the yard. There were only three of them that were sent over to kneel. Everyone else was laying down. Okay. How about those people? So if they suffered a similar injury and if they had also cried out in pain, and if they were being hurt in that same way, then, yes, they would have a claim. If the court has no further questions, I'd like to reserve my remaining time. Thank you. Very good. Good morning, counsel. Good morning. May it please the Court. Ashley Harlan representing Sgt. Albonaco and Lt. Bishop in this matter. Your Honors, every issue in this case, from the excessive force claim, the deliberate indifference claim, even the qualified immunity issue, can all be resolved by answering a single question, and that is has Mr. Berry presented competent evidence to demonstrate that Sgt. Berry was enduring pain or at risk for injury while he knelt for the duration of the prison yard sweep? In this case, of course, the answer is no, and without having such notice, it is impossible for Mr. Berry to survive summary judgment on an excessive force claim, which requires a showing of malicious and sadistic intent on behalf of the sergeant and lieutenant in this case, or the deliberate indifference claim, which requires a showing of subjective awareness of the risk of harm and deliberate indifference to that harm. Counsel, Mr. Berry's counsel argues at some point he fell over in pain and cried out, and then one of the guards came and actually put him back in place. Wouldn't that provide some sort of notice, even if the initial actions in forcing him to kneel on the asphalt were reasonable under the circumstances? No, it would not, Your Honor, and that's because there's no showing in this record that Mr. Berry has presented evidence that either Sgt. Albonaco or Lt. Bishop knew that he fell over, knew that he cried out. Mr. Berry never says, they looked at me, they saw me, they spoke with me, I spoke with them. Instead, he makes allegations that pertain to three other correctional officers who were charged with supervising him and two others while they knelt, but does not make a similar showing as regards to these defendants. The overall scenario, this quibbling over the 30 yards, 30 yards is a significant amount of space in considering the overall circumstances of what was occurring on the yard. A homicide had just taken place. There were two assailants and presumed two weapons. There were 100 inmates loose in that area. Any one of them could have come into contact with this second weapon, and they had a duty. They had a duty to protect the yard, to protect the inmates, to protect the staff working there, and secure the facility. So what they did was they issued an order that three other correctional officers would escort these three noncompliant inmates to the opposite end of the yard to kneel and face a concrete wall until they could be dealt with. But there's no evidence in the record that shows that they stood nearby and watched that happen. Mr. Berry fails to make such a showing, and therefore, he should not survive summary judgment. Well, bottom line, from your perspective, both the allegation to the complaint and more specifically in the summary judgment motion, that when you take the totality of what Mr. Berry alleged, that there's insufficient specificity that shows that your client, or clients, I guess in this case, were aware or deliberately indifferent to, number one, his pain, or that there was anything really amiss compared to the other prisoners under the circumstances. Well, that's correct. He sort of in vague sense says that the defendants supervised, and that's the most promising allegation made anywhere in the declarations or the deposition, that these individuals supervised. But there's no detail as to what that means. I've been supervised often in my career. I've done some supervising as well, and I'm sure the same can be said of you three individuals, Your Honors. And I'm sure it's well settled that that doesn't necessarily mean that you're standing over someone watching them do a job that you've delegated to them. Mr. Berry has failed to show that, again, that he looked anyone in the eye, that he saw anyone notice him, that anyone acknowledged him, aside from these three other correctional officers who we do not have names or identities for. Counsel, how do you respond to Berry's claim that there's a dispute as to when the weapon was found? Well, the claim that Mr. Berry puts forward is that a weapon had been found before he was ordered to kneel. But he doesn't base that claim off of competent evidence. He doesn't tell us that he saw this happen. He doesn't tell us that either of the defendants told him that this happened. And so, therefore, he's basically asserting some sort of blanket allegation without actual evidential support. And, therefore, it's not enough to survive summary judgment. Whether or not we want to take Sergeant Albonaco's claim for facts, I think, is a valid point. He made the order. He issued the order to have the yard locked down, to have the inmates searched, and, therefore, knows the purpose behind that order. He has personal knowledge of that fact, where Mr. Berry does not. I had asked opposing counsel about the concept of qualified immunity, at least for one of your clients. Her contention is that there's case law that indicates that, certainly at the summary judgment stage, this is not appropriate here. What would your response be in terms of cases or law that would show that your one client is entitled to some kind of protection of qualified immunity? Yes, Your Honor. Just as recently as last Monday, the United States Supreme Court addressed this issue in the Mulenix case. That case considered whether or not an assailant who was being- That's the high-speed case where they shot him? Yes, Your Honor. Originally, the clearly established right was defined as such. A police officer may use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others. And the Supreme Court rejected that definition for the clearly established right in that case and supplanted it with the following. Officers acted reasonably in confronting a reportedly intoxicated fugitive set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers and who was moments away from encountering an officer on Cemetery Road. It's an extremely high level of specificity that's required. In a case like this, it's inappropriate, as Mr. Berry has repeatedly contended, to define the clearly established right as the right to be free of excessive force. What's more appropriate is something along these lines. Can an officer order an inmate to kneel for the duration of a prison yard sweep in order to neutralize a potential deadly threat during an ongoing emergency when they are reasonably believed to be in possession of a deadly weapon? There are no cases cited in Mr. Berry's brief that support such a contention because that is not a clearly established right. And therefore, the officers have no notice that their acts as they pertain to this specific case are a violation of the law. I would also argue that we could extend any qualified immunity protections that are granted to Sergeant Albonaco to Lieutenant Bishop on the basis that there's been no distinction made between these two actors for the duration of the case. Mr. Berry repeatedly refers to Sergeant Albonaco and Lieutenant Bishop as defendants and almost acts as though they've acted in concert from beginning to end in every instance in this case. And so where there's no distinction between Sergeant Albonaco's acts and Lieutenant Bishop's acts, I think it's appropriate to say that where Sergeant Albonaco receives qualified immunity, so should Lieutenant Bishop. If the Court is at all interested in adjusting the local rule issue, I can discuss that briefly. I don't have any questions. Do my colleagues have any questions on that? No. No. If there are no further questions from the bench, then I'd like to submit. Very good. Thank you. Thank you. We'll hear rebuttal. Two points on the officer's involvement. First, simply because there were also three other officers on the yard does not somehow absolve Defendants Albonaco and Bishop of responsibility. There could be five liable defendants here. My client did not know the names of them, so he only sued two of them. So I don't think that that absolves them of liability. Go ahead and make your point, and then I want to ask you about this, the recent Supreme Court case. Sure. Second, to the extent there isn't enough evidence in the record or the context isn't clear, it's because defendants did not follow the local rule and lodged with the district court the entirety of the deposition transcript. Now, we filed a motion to – But this is a deposition of your client, right? That's correct. He knows what he said. He did, and it's fully – what is in this deposition transcript. We filed a motion to supplement the record, which was denied. But, you know, we respectfully disagree because everything that is in this deposition transcript is consistent with his declaration. There are many points during this deposition testimony in which Mr. Bishop and Mr. Albonaco are specifically identified and their roles are discussed. And had the district court had that in front of it, it would have seen that Mr. Berry's story has been consistent from beginning to end. Counsel, you heard opposing counsel make reference to the 8-to-1 decision that the Supreme Court handed down this last week. You know the facts. I don't need to recite them to you. How does your position on qualified immunities survive that case? So Mullinex is a completely different situation. In Mullinex, it's a Fourth Amendment high-speed car chase. Now, as the Supreme Court discussed in that case, all of the cases that had gone up to the Supreme Court on that issue, the court had denied qualified immunity. And there were no lower court cases stating that in that situation where there's a high-speed car chase and there is someone at risk, there's a police officer at risk on the ground, that that is an unreasonable use of force. Here, by contrast, the only time a similar case has gone up to the Supreme Court, Hope v. Pelzer, where an inmate is tied to a hitching post and left out in the burning sun, the Supreme Court says that's an obvious Eighth Amendment violation. These are completely different situations. The law is not hazy. So you think you have to look at – you can't take the larger issue. You have to look specifically at the high-speed chase versus an inmate situation. That's how you distinguish it? Well, that – and also here, you know, this court has held on numerous occasions that the right in the prison context have already been particularized. It's not just excessive force. It's excessive force under the Eighth Amendment in the context of a prison disturbance or in the context of, you know, deliberate indifference to serious medical need. So that's already been decided by this court. Thank you very much. One more question. Sure. Back to your claim that the weapon had been found before the officers ordered Mr. Berry to his knees. Yes. What's your support for that? Mr. Berry's naked claim? He says that in his deposition testimony, yes. Thank you. Thank you. Thank you both. Counsel, appreciate it. The case just argued is submitted.
judges: Fernandez, M. Smith, Morris